DOCKET NO. 22-1387

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**Antoinette Buggs**

*Plaintiff-Appellant,*

*v.*

**FCA US LLC**

*Defendant-Appellee.*

On Appeal From The United States District Court,
Eastern District Of Michigan
Civil Action No. 20-cv-10218 (Honorable Nancy G. Edmunds, *presiding)*

## **DEFENDANT-APPELLEE'S BRIEF ON APPEAL**

ERNST, CHARARA & LOVELL, PLC
STEPHEN M. LOVELL (P80921)
645 Griswold St., Ste. 4100
Detroit, Michigan 48226
(313) 965-5555
Attorneys for Plaintiff-Appellant

OGLETREE, DEAKINS, NASH, SMOAK &STEWART, PLLC
SHARON RAE GROSS (P42514)
34977 Woodward Ave. Suite 300
Birmingham, MI 48009
PH: (248) 593-6400
FAX: (248) 283-2925
rae.gross@ogletree.com
Attorneys for Defendant-Appellee

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Defendant-Appellee FCA US LLC makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    Yes. Parent Corporation/Affiliate Name: Stellantis N.V.

    Relationship with Named Party: Named Party is a wholly-owned subsidiary of Stellantis N.V. (formerly known as Fiat Chrysler Automobiles N.V.), a publicly-traded company organized and existing under the laws of The Netherlands with its principal place of business in the Netherlands.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

    Yes.  Parent Corporation/Affiliate Name: Stellantis N.V.

    Relationship with Named Party: Named Party is a wholly-owned subsidiary of Stellantis N.V., a publicly-traded company organized and existing under the laws of The Netherlands with its principal place of business in the Netherlands.


s/Sharon Rae Gross                          August 4, 2022
Sharon Rae Gross                            Date

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................... v

STATEMENT OF JURISDICTION....................................................... vi

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................ vii

STATEMENT OF THE CASE....................................................................1

   A.   Buggs' Employment ............................................................1

   B.   Medical Issues, Work Restrictions and Accommodations .......................2

       1.   2016 - Stroke and Carpal Tunnel ........................................2

       2.   2017 – No Work Restrictions on File ...................................4

       3.   2018 -- Sporadic Carpal Tunnel Restrictions .....................5

       4.   2019 – Continued Restrictions And Intermittent FMLA Leave........8

       5.   Job Reassignment .............................................................10

   C.   Reason for Termination.......................................................11

SUMMARY OF THE ARGUMENT ...................................................13

ARGUMENT AND CITATIONS OF AUTHORITY ...........................14

   A.   Standard of Review .............................................................14

   B.   The District Court Correctly Determined That Buggs Did Not Establish A Claim For Disability Discrimination .....................................15

   C.   Buggs Did Not Establish a Failure to Accommodate. ..............................19

i

D.    The District Court Correctly Determined that Buggs Could Not Establish a Claim for Retaliation. ................................................................22

CONCLUSION .....................................................................................24

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................25

CERTIFICATE OF SERVICE ................................................................26

DESIGNATION OF APPENDIX CONTENTS....................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bachman v. Swan Harbour Ass'n*,
653 N.W.2d 415 (Mich. Ct. App. 2002)............................................................22

*Donald v. Sybra, Inc.*,
667 F.3d 757 (6th Cir. 2012) ..............................................................................15

*Hendricks-Robinson v Excel Corp*,
154 F3d 685 (7th Cir. 1998) ...............................................................................20

*Kroll v. White Lake Ambulance Auth.*,
763 F.3d 619 (6th Cir. 2014). ............................................................................14

*Majewski v. Automatic Data Processing, Inc.*,
274 F.3d 1106 (6th Cir. 2001) ............................................................................18

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)............................................................................................15

*Michael v. Caterpillar Fin. Servs. Corp.*,
496 F.3d 584 (6th Cir. 2007) ..............................................................................16

*Mickey v. Zeidler Tool & Die Co.*,
516 F.3d 516 (6th Cir. 2008) ..............................................................................23

*Pawlaczyk v. Besser Credit Union*,
No. 1:14-CV-10983, 2015 U.S. Dist. LEXIS 90591
(E.D. Mich. Apr. 13, 2015)................................................................................23

*Rorrer v. City of Stow*,
743 F.3d 1025 (6th Cir. 2014) ............................................................................22

*Russell v. Three Pillars*,
No. 21-1481, 2022 WL 351770 (6th Cir. Feb. 7, 2022)....................................17

*Seeger v. Cincinnati Bell Tel. Co.*,
681 F.3d 274 (6th Cir. 2012) ..............................................................................16

*Smith v. Chrysler Corp.*,
    155 F.3d 799 (6th Cir. 1998) ................................................................17

*Smith v. Perkins Bd. of Educ.*,
    708 F.3d 821 (6th Cir. 2013) ...............................................................14

*Strickland v. City of Detroit*,
    995 F.3d 495 (6th Cir. 2021) ...............................................................23

*Swann v. Washtenaw County*,
    221 F. Supp. 3d 936 (E.D. Mich 2016) ...............................................15

*Thompson v. E.I. DuPont deNemours & Co.*,
    70 F. App'x 332 (6th Cir. 2003) ..........................................................21

*Tillman v. Ohio Bell Tel. Co.*,
    545 F. App'x 340 (6th Cir. 2013) .........................................................18

*United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*,
    330 F.3d 747 (6th Cir. 2003) ...............................................................14

*Walsh v. United States Parcel Serv.*,
    201 F.3d 718 (6th Cir. 2000) ...............................................................21

*Wausau Underwriters Ins. Co. v. Vulcan Dev. Inc.*,
    323 F.3d 396 (6th Cir. 2003) ...............................................................15

## Statutes

28 U.S.C. § 1291 .......................................................................................vi

42 U.S.C. § 12101 .....................................................................................13

MCL 37.1101 .............................................................................................13

## Other Authorities

Fed. R. Civ. P. 56(a)..................................................................................14

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Rule 34 of the Federal Rules of Appellate Procedure and the Rules of the Sixth Circuit Court of Appeals, Defendant-Appellee submits that oral argument is not necessary due to the straightforward issues on appeal and well-settled principles of law that govern the same; however; if oral argument is granted, Appellee requests to participate.

## <u>STATEMENT OF JURISDICTION</u>

Defendant-Appellee FCA US LLC ("FCA US") agrees that the District Court's Opinion and Order was a final appealable order from which Plaintiff-Appellant filed a timely Notice of Claim of Appeal and that this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court properly granted FCA US's motion for summary judgment as to Plaintiff-Appellant's discrimination claims under the ADA and PWDCRA, finding that FCA US had a legitimate, non-discriminatory reason for terminating Plaintiff-Appellant that was not a pretext.

2.      Whether the District Court properly granted FCA US's motion for summary judgment as to Plaintiff-Appellant's failure to accommodate claims under the ADA and PWDCRA, finding that Plaintiff-Appellant did not propose, and FCA US did not fail to provide, Plaintiff-Appellant reasonable accommodations.

3.      Whether the District Court properly granted FCA US's motion for summary judgment as to Plaintiff-Appellant's retaliation claims under the ADA and PWDCRA, finding no evidence that could give rise to an inference that Plaintiff-Appellant's termination was retaliatory.

## STATEMENT OF THE CASE

### A.    Buggs' Employment

Plaintiff-Appellant Antoinette Buggs ("Buggs") is a former assembly worker at Defendant-Appellee FCA US LLC's ("FCA US") Jefferson North Assembly Plant ("JNAP") in Detroit. (Complaint, RE 1, PageID# 2). Buggs began working as a Temporary Part-Time employee ("TPT") for FCA US in June 2015. (Buggs Deposition, RE 20-2, PageID# 289, p. 24). As a TPT, Buggs did not have regular employee status or seniority. (*Id*. PageID# 290, pp. 25-26). She was called to work on an as-needed basis as a replacement worker for employees who were absent or on vacation. *Id.* While a TPT, Buggs was primarily assigned to Team 41 on the door line, where she usually did the "panel secure" job, which required her to use hand drills to apply screws to secure the panel to the door. (*Id*. pp. 26-28). At times, she also performed a door tester job that required use of a single hand drill. (*Id*., PageID# 291, 310, pp. 29, 107).

Buggs was not hired as a regular, full-time, employee with seniority until March 5, 2018. She was represented by a union and her employment was subject to a collective bargaining agreement. (*Id*., PageID# 289-292, pp. 24, 25, 36). She acknowledges that seniority governs choice of job assignments at the plant. (*Id*., PageID# 292, p. 36). As a new hire in 2018 with low seniority, Buggs would

necessarily have to be placed on a job in general assembly (Capers Deposition, RE 20-33, PageID# 459, p. 28).

Buggs had several supervisors during her tenure. Defendant Donna Langford Reed ("Reed")[1] first became Buggs' supervisor on or about February 28, 2018, just a few days before Buggs was hired as a regular employee. Reed supervised Buggs until approximately June 5, 2019 when Buggs was assigned a temporary audit positon in the Quality Department. (*Id*., PageID# 322, 332, pp. 153-154, 193). Reed is the only FCA US supervisor Buggs specifically identified as having allegedly discriminated against her based on a disability. (*Id*., Page ID# 293, p. 39).

**B.   <u>Medical Issues, Work Restrictions and Accommodations</u>**

**1. 2016 - Stroke and Carpal Tunnel.** The first medical issue Buggs had while at FCA US was a stroke in February, 2016. (*Id*. p. 40). Although she was still a TPT and not yet eligible for FMLA leave, Buggs was placed on unpaid leave status until she was able to return to work on February 29, 2016, at which time she had no work restrictions to be accommodated. (*Id*. p. 40-41; 2/29/16 Return to Work Form, RE 20-3, PageID# 336-337).

---

[1] Defendant Reed was dismissed as a Defendant pursuant to stipulation. (Stipulation and Order Dismissing Reed, RE 24, PageID# 728-729).

Near the end of July, 2016, Buggs began experiencing issues with pain in her hands. (Buggs Deposition, RE 20-2, PageID# 296, p. 50). She claimed she had no such issues before her employment at FCA US. (*Id*., PageID# 290, p. 26). Upon returning to work following a brief absence, Buggs provided the JNAP Medical Department with a return to work note from her doctor dated July 27, 2016. (*Id*., PageID# 296, p. 50; 7/27/2016 Return to Work Form, RE 20-4, PageID# 339). The note said that Buggs might have carpal tunnel syndrome and should be restricted from doing any *"gripping, drilling, and using hand tools"* until November 15, 2016. *Id.* The Medical Department accordingly put Buggs' restrictions into the Company's computer system that tracks employees' work restrictions.[2] (Buggs Deposition, RE 20-2, PageID# 296, p. 50; Reed Deposition, RE 20-5, PageID# 346, p. 12).

As a result of her restrictions, Buggs was unable to perform the functions of the panel secure job she was assigned to on the assembly line and she was given a 30 day leave because there were no positions available for her that would meet her restrictions. (Buggs Deposition, RE 20-2, PageID# 296, p. 51). A few weeks later, Buggs went to her doctor and requested that he remove all of her restrictions so she could return to work. (*Id*., p. 52-53). Buggs then provided the Company

---

[2] Supervisors are able to go into this system to view work restrictions and determine if there is a job an employee can be assigned to within their restriction. (Reed Deposition, RE 20-5, PageID# 346, p. 12)

with a new doctor's note, dated August 19, 2016, indicating that she had no restrictions. (8/19/2016 Return to Work Form, RE 20-6, PageID# 354). Buggs returned to work but quickly determined that she still could not do any lifting or use hand tools and therefore informed the Company that she was unable to perform any of the available assembly jobs. (Buggs Deposition, RE 20-2, PageID# 297, p. 55). Although she was still a TPT, Buggs was given another approved unpaid leave. *Id.*

In October and December 2016, Buggs had two surgeries – one on each hand. (*Id.*, PageID# 298, p. 60). Buggs was off work continuously for the surgeries and admits that she could not have worked at all during that time. *Id.*

**2. 2017 – No Work Restrictions on File.** Buggs returned to work from her surgeries on January 30, 2017. (*Id.*, PageID# 299, p. 61; 1/26/17 Physical Status Report, RE 20-8, PageID# 361). Upon her return to work, Buggs presented the FCA US Plant Medical Department with no restrictions. *Id.* Additionally, following an absence due to a car accident in March, 2017, Buggs again returned to work with a doctor's note indicating she had no restrictions (*Id.*, p. 62; 3/17/17 Return to Work Note, RE 20-9, PageID# 365).

Buggs claimed that she was "forced" to work on the rear door panel in July, 2017 and that the job violated her purported restrictions. However, the plant Medical Department had no restrictions on file for Buggs in 2017; nor does she

4

offer any evidence of restrictions submitted during this time. (Medical Department Restriction History, RE 20-11, PageID# 369). (Buggs Deposition, RE 20-2, PageID# 300-302, pp. 66-75; Work Injury Statement, RE 20-12, PageID# 371).

**3. 2018 -- Sporadic Carpal Tunnel Restrictions.** Reed became Buggs' immediate supervisor as of February 28, 2018. (Buggs Deposition, RE 20-2, PageID# 292, 293, pp. 36, 39.). From the outset, Buggs thought that Reed was rude because she allegedly commented on Buggs' hair and her diet, and came into her work area and touched the doors as she was trying to work on them. (*Id.*, PageID# 303, pp. 77-80). Buggs memorialized her dislike for Reed in a "Voluntary Statement" she prepared on March 12, 2018 for her Union. (Voluntary Statement, RE 20-13, PageID# 373-375). In her statement, Buggs claimed that on March 10, 2018, Reed moved her from a job on Team 41 on the door line to a job on Team 38, working on a window seal job – a job she claims she could not do because of her carpal tunnel surgery. (*Id.*; Buggs Deposition, RE 20-2, PageID# 305, p. 85). However, Buggs had returned from surgery with no restrictions and there is no record of Buggs submitting work restrictions that were in effect as of March 10, 2018. (Buggs Deposition, RE 20-2, PageID# 302, 305, pp. 73-75; 85-87; Medical Department Restriction History, RE 20-11, PageID# 369).

After attempting to work the window seal job on March 10, 2018, Buggs went to the plant Medical Department. (*Id.*, PageID# 305-306, pp. 88-91). The Medical Department provided her with wrist wraps, biofreeze, and over-the-counter medication. *Id.* On March 16, 2018, Buggs presented the Medical Department with a note from an urgent care center stating that she was restricted from lifting more than 5 pounds for two weeks but that assembly and hand tools were otherwise okay. (Urgent Care Note; RE 20-14, PageID# 377). The restriction was entered into the computer system but it did not prevent Buggs from working.

On March 26, 2018, Buggs presented another doctor's note indicating she could do "no gripping, hand tools are okay, nothing over five pounds" for the period from March 26, 2018 through June 26, 2018. (Buggs Deposition, RE 20-2, PageID# 308-309, pp. 100-01; 3/26/18 Return to Work, RE 20-16, PageID# 388). Buggs stayed on Team 41, but thinks she may have been reassigned from the panel secure to the door tester job, which uses a small drill but requires no other tools and nothing weighing over five pounds (Buggs Deposition, RE 20-2, PageID# 310, pp. 106-107).

On June 13, 2018, the drill Buggs was using stopped working, and Reed asked her to use a heavier, secondary drill to do the panel secure job. (Buggs Deposition, RE 20-2, PageID# 311-313, pp. 109-118). Buggs refused to use the

drill, telling Reed that it was too heavy. (*Id.,* PageID# 311, p. 110). Although Buggs claims that Reed told her she was going to get Buggs kicked off the team, she admits that did not happen and was not forced to do so. (*Id.,* PageID# 311-312, pp. 112-113). The normal drill began working again shortly thereafter and production resumed. *Id.* After the incident with the drill, Buggs asked her doctor to remove the no-gripping restriction. Buggs' new restrictions provided for limited gripping up to five hours a day, no **heavy duty** drills, and no lifting over five pounds. (*Id.*, PageID# 313, p. 119; 6/18/18 Return to Work Form, RE 20-17, PageID# 390).

Buggs applied for intermittent FMLA leave related to carpal tunnel syndrome in June of 2018. (Buggs Deposition, RE 20-2, PageID# 313-315, pp. 122-25; 6/01/18 FMLA, RE 20-18 PageID# 392). She was approved for intermittent leave of up to two days per week with a duration of up to three days per episode (6/01/18 FMLA, RE 20-18 PageID# 404). Buggs provided FCA US with another doctor's letter with slightly different restrictions in September, 2018. (Buggs Deposition, RE 20-2, PageID# 322, p. 156; 9/21/18 Return to Work, RE 20-19, PageID 409). Buggs' restrictions were now "activity as tolerated, not >5 lbs, limited hand tools." (*Id.*; Buggs Deposition, RE 20-2, PageID# 322-323, pp. 156-157).

On December 20, 2018, Buggs presented restrictions, once again limiting her use of vibratory tools, and restricting her from lifting over 5 pounds. (*Id*., PageID# 325, p. 167; 12/20/18 Return to Work Form, RE 20-22, PageID# 416). Buggs admits that during all time periods in 2018 when she had restrictions of no gripping, no lifting over 5 pounds and/or no use of vibratory tools, there were no assembly line jobs that she could perform on Team 41 or Team 38. (Buggs Deposition, RE 20-2, PageID# 309-310, pp. 104-105). What Buggs apparently wanted was a job off the assembly line; however, with a hire date of March 2018, she did not have enough seniority to secure jobs outside assembly. (Capers Deposition, RE 20-33, PageID# 459, p. 28).

### 4. 2019 – Continued Restrictions And Intermittent FMLA Leave.

In March of 2019, Buggs provided another doctor's note continuing her restrictions of "limited use" of vibratory tools and no lifting anything over 5 pounds. (Buggs Deposition, RE 20-2, PageID# 326, p. 169; 3/20/19 Return to Work Form, RE 20-23, PageID# 418). Buggs also continued to have approved intermittent FMLA leave that she used for absences and to leave mid-shift, if her hands/wrists [carpal tunnel disability] were bothering her. (Buggs Deposition, RE 20-2, PageID# 326, pp. 171-173).

Buggs alleged that in April of 2019, Defendant Reed "harassed" her by making her wait an excessive amount of time after requesting to "FMLA out"

(i.e., to leave mid-shift using intermittent FMLA leave). Buggs told the Team Leader (Tiffany, another hourly, union represented employee) that she wanted to leave but is unaware of how quickly the Team Leader made Reed aware of Buggs' request to leave. (*Id*., PageID# 326-328, pp. 170-177). Buggs claimed that she experienced another delay in allowing her to "FMLA out" on May 1, 2019, but she is again unaware if, or whom, the Team Leader informed Reed of her request. (*Id*., PageID# 328, pp. 177-179).

At first Buggs complained about these "FML delays" to her Union and asked that a grievance be filed (*Id*., PageID# 326, 328, pp. 170, 177; 4/10/19 Voluntary Statement, RE 20-24, PageID# 420). When that did not happen, she complained directly to Arkena Willis in JNAP Labor Relations. (Buggs Deposition, RE 20-2, PageID# 329, p. 184; Willis Deposition, RE 20-15, PageID# 382,385, pp. 11-13, 25). Willis checked with the corporate office about the requirements and then reconfirmed with Reed and other JNAP leaders that they were to allow employees asking to leave the plant using their intermittent FMLA leave to go as soon as possible. *Id*. However, the nature of an assembly plant is such that a supervisor cannot simply let an employee walk off the line. Supervisors needed to first be made aware of the request and then find a replacement, which may entail borrowing from another area or assigning a Leader to work the line. (Willis Deposition, RE 20-15, PageID# 382-383, pp. 13-14;

9

Capers Deposition, RE 20-33, PageID# 458, pp. 23-25; Reed Deposition, RE 20-5, PageID# 346, p. 13). Buggs identifies no further purportedly "harassing" delays in "FMLA out" approvals by Reed and she asserted no FMLA claim below.

**5. Job Reassignment.** In May, 2019, Buggs provided FCA US with a doctor's letter stating that she should be moved to another department where she would not have to use a drill or lift anything. (Buggs Deposition, RE 20-2, PageID# 329, p. 184; 4/25/19 Letter, RE 20-25, PageID# 422). Buggs did not hold sufficient seniority to successfully bid on any open positions off the assembly line. However, in June, 2019, JNAP had a temporary need for workers in Quality to support an atypical audit connected with a warranty or quality issue. (Capers Deposition, RE 20-33, PageID# 459, pp. 27-28). The temporary nature of the assignment allowed management to transfer lower seniority employees on a temporary basis. *Id.* FCA US used this opportunity to transfer Buggs to a position in Quality that – by her admission – accommodated all of her restrictions. (Buggs Deposition, RE 20-2, PageID# 322, pp. 153-54). Absent this special audit need, Buggs could not have transferred to Quality without violating the seniority rights of longer-tenured employees. (Capers Deposition, RE 20-33, PageID# 459, p. 27-28). Reed stopped being Buggs' supervisor upon her transfer to Quality on or about June 5, 2019. (Buggs Deposition, RE 20-2, PageID# 332, pp. 193-194).

10

**C.**   **Reason for Termination**

Although she was still working the job in Quality at the time, Buggs re-applied for intermittent FMLA leave on or about July 31, 2019. Her request was for absences up to three times per week with a duration of up to 1-2 days per episode and for appointments every 2-3 months. (*Id*., PageID# 330, p. 185; 8/1/19 FMLA Notice, RE 20-26, PageID# 425-429).

On August 1, 2019, Sedgwick, the Company's Third Party FMLA Administrator, sent Buggs a letter regarding her FMLA claim. *Id*. The letter informed Buggs that her treating provider had not properly completed the Provider Certification because he failed to identify a duration for the leave. Sedgwick advised Buggs that her provider needed to provide the required information by August 11, 2019 or her claim may be denied. *Id.*

A corrected FMLA Certification was faxed to Sedgwick on August 11, 2019. (Buggs Deposition, RE 20-2, PageID# 330-331, pp. 185-91; Altered FMLA Paperwork, RE 20-27, PageID# 431-433). The form was an exact duplicate of the prior certification except that it included a duration through December 28, 2019 and bore the initials "RW" (purportedly for Buggs' provider, Dr. Robert Walker) next to the duration entries and next to the doctor's "Signature" with a new date of "08-10-2019." *Id.* After checking with Dr. Walker, Sedgwick notified Anne Stebbins (the Hourly FMLA Administration Manager at FCA US's Corporate

11

Headquarters) that Dr. Walker denied making the edits to Buggs' form or initialing the changes. He provided a signed statement to that effect (Stebbins Deposition, RE 20-34, PageID. 466-467, pp. 15-18; Dr. Walker's Confirmation, RE 20-28, PageID# 435-438).

Stebbins, who had been involved in at least 10-12 other cases of hourly employees being terminated for falsifying FMLA paperwork, alerted JNAP Labor Relations about the information received from Sedgwick and prepared questions for them to ask Buggs about her role in the matter. (Stebbins Deposition, RE 20-34, PageID# 465-466, pp. 13-16; Questions for Buggs, RE 20-29, PageID# 440-441). Buggs was interviewed by Arkena Willis of JNAP Labor Relations. (Willis Deposition, RE 20-15, PageID# 383, pp. 16-17; Questions for Buggs, RE 20-29, PageID# 440-441). Buggs denied that she made the changes to the form; however, she was unable to explain (then or now) why her doctor would lie when he confirmed that he had not submitted the altered FMLA form. (Buggs Deposition, RE 20-2, PageID# 331-332, pp. 192-93). Buggs was suspended following her interview on August 24, 2019 while her responses were reviewed. (Supervisor's Report and Indefinite Suspension, RE 20-30, PageID# 443).

FCA US concluded that Buggs altered the FMLA form. Her employment was terminated on August 28, 2019 for submitting a false FMLA Certification, which violated Company Standards of Conduct. Specifically Standard No. 1

prohibited "providing false and/or misleading information to the Company." (Buggs Deposition, RE 20-2, PageID# 332, p. 194; Standards of Conduct, RE 20-31, PageID# 445-448; Termination Letter, RE 20-32, PageID# 450). The termination decision was made by JNAP Labor Relations Supervisor Shera Capers after conferring with Stebbins at Corporate and without any involvement by Defendant Reed. (Capers Deposition, RE 20-33, PageID# 457, p. 20).

Buggs thereafter filed her Complaint on January 28, 2020. Following the completion of discovery, FCA US sought summary judgment as to all claims, including disability discrimination (Counts I and IV), retaliation (Counts II and V), and failure to accommodate (Counts III and VI) in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 *et seq.* The District Court granted summary judgment dismissing Buggs' claims on March 29, 2022. (Opinion, RE 27, PageID# 741-755).

## SUMMARY OF THE ARGUMENT

The District Court correctly granted summary judgment in favor of FCA US. Buggs failed to demonstrate a *prima facie* case as to her discrimination or retaliation claims. Moreover, even assuming she established a *prima facie* case, Buggs presented insufficient evidence to create a genuine fact issue as to whether FCA US's rationale for its actions was a pretext for disability discrimination or

13

retaliation. Likewise, Buggs failed to present a material question of fact as to whether FCA US failed to reasonably accommodate her variable carpal-tunnel-related work restrictions within the constraints of the collective bargaining agreement to which Buggs' employment was subject. Buggs argues that the District Court improperly "failed to draw all inferences in favor" of her; however, the District Court was required only to draw *reasonable* inferences in favor of the non-moving party; it need not construe the record in a manner that is wholly unsupportable—in the view of any reasonable jury, considering the objective evidence. *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014); Fed. R. Civ. Proc. 56.

## ARGUMENT AND CITATIONS OF AUTHORITY

### A.  Standard of Review

This Court reviews de novo the trial court's grant of summary judgment. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) The Court may affirm the trial court on any basis supported by the record, including one not considered below. *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers,*

330 F.3d 747, 750 (6th Cir. 2003); *Wausau Underwriters Ins. Co. v. Vulcan Dev. Inc.,* 323 F.3d 396, 403-04 (6th Cir. 2003).

## B.    The District Court Correctly Determined That Buggs Did Not Establish A Claim For Disability Discrimination

Buggs claims she was subjected to disparate treatment disability discrimination under the ADA and PWDCRA.[3] To establish a *prima facie* case of disparate treatment discrimination, Buggs must prove: (1) she has a disability; (2) she is otherwise qualified for her job with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Lewis*, 681 F.3d 312, 321 (6th Cir. 2012) (*en banc*).  Because Buggs has not presented direct evidence of discrimination, her claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The plaintiff must first establish a *prima facie* case of discrimination, then the burden of proof shifts to the employer to articulate a legitimate, non- discriminatory reason for its actions. Once the employer articulates such a reason, the burden of proof returns to the plaintiff to rebut the proffered reason by showing it was a pretext for discrimination. *Id*. at 804.

---

[3] The PWDCRA substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally resolve the plaintiff's PWDCRA claim.  *Donald v. Sybra, Inc*., 667 F.3d 757, 764 (6th Cir. 2012); *Swann v. Washtenaw County*, 221 F. Supp. 3d 936, 940 (E.D. Mich 2016).

Even if Buggs could meet the threshold elements and establish a *prima facie* case, the District Court correctly held that Buggs could not overcome the second step in the *McDonald Douglas* framework – demonstrating that FCA US's legitimate, non-discriminatory reason for terminating her employment was a pretext for disability discrimination.[4]  To demonstrate that FCA US's stated legitimate reason for her termination is pretextual, Buggs was required to show a material factual issue as to whether the proffered reason: (1) had no basis in fact; (2) did not motivate Defendant's conduct; or (3) was insufficient to warrant the conduct.  *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012).

FCA US terminated Buggs' employment because it concluded that she falsified dates and her doctor's initials on an FMLA provider certificate. Buggs first argues there is sufficient evidence of pretext because when interviewed by FCA US, she denied that she altered any information on the certificate. Buggs also takes issue with the diligence of FCA US's investigation. In particular she asserts, as she did below, that a "simple" check to determine the location of the

---

[4] Though Buggs alleged that she experienced discrimination beyond her termination, the District Court properly held that, "these allegedly adverse acts, such as being yelled at or sent to the medical department, do not constitute materially adverse change[s] in the terms and conditions of employment sufficient to form the basis of a discrimination claim." *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (adverse acts "must be more disruptive than a mere inconvenience or an alteration of job responsibilities"). (Order, RE 27, PageID# 750).

phone number the fax emanated from would have shown that Buggs did not send it. (Appellant's Brief, Doc 14, p.27). Somewhat paradoxically, Buggs also argues that she had no reason not to wait for her doctor to fix the certification because at the time, she was working on a job that was not so demanding that she actually needed the intermittent FMLA leave.

The mere denial of her involvement is an insufficient basis for Buggs to demonstrate that FCA US's articulated non-discriminatory rationale has no basis in fact. Likewise, Buggs' contention that if FCA US had traced the fax number it would have somehow absolved her of any involvement is insufficient to demonstrate a triable pretext issue. The assertion is entirely speculative and remains unsupported by citation to any testimony or record evidence, as it was before the District Court. Moreover, it is not required that the "decisional process used by the employer be optimal or that it leave no stone unturned." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998); *Russell v. Three Pillars*, No. 21-1481, 2022 WL 351770, at *3 (6th Cir. Feb. 7, 2022) ("[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.").

Plaintiff also failed to raise a triable issue with respect to whether the proffered reason actually motivated Defendant's conduct. This Court has applied the honest belief rule at the pretext stage of the analysis of discrimination claims.

17

*Majewski v. Automatic Data Processing, Inc*., 274 F.3d 1106, 1117 (6th Cir. 2001). An employer establishes an "honest belief" if the employer "reasonably relied on the particularized facts that were before it at the time the decision was made." *Id*. Plaintiff cannot establish that the reason was pretextual simply by asserting in response that the decision was incorrect. *Id*. As the District Court explained, "according to the honest belief rule, to establish pretext, the plaintiff must allege more than a dispute over the facts upon which [her] discharge was based. [She] must put forth evidence which demonstrates that the employer did not honestly believe in the proffered non- discriminatory reason for its adverse employment action." *Tillman v. Ohio Bell Tel. Co.,* 545 F. App'x 340, 349 (6th Cir. 2013) (quoting *Braithwaite v. Timken Co.,* 258 F.3d 488, 493-94 (6th Cir. 2001)). (Order, RE 27, PageID# 751). "To determine whether the employer had an honest belief in the proffered basis for termination, courts look at whether it established a reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 349.

Here, FCA US made the choice to terminate Buggs with the honest belief that her conduct violated the FCA Standards of Conduct. FCA US, through Sedgwick, inquired of Buggs' physician whether he made the changes to the FMLA certification form. Her physician responded and confirmed in writing, that he ***did not***. FCA US's investigation was initiated at its corporate office, not at

JNAP – Buggs' assigned work location. And Defendant Reed, the only supervisor Buggs contended was intentionally discriminating against her, was no longer her supervisor at the time of her termination and had no involvement whatsoever in the investigation or the termination decision. The District Court correctly determined that there was no triable issue of pretext with respect to Plaintiff's termination.

Finally, Buggs was unable to offer evidence that Defendant's proffered reason for its conduct was insufficient to warrant the conduct. Stebbins, the corporate office hourly FMLA Administrator, testified that she was personally involved in at least 10-12 other cases of hourly employees being terminated for falsifying FMLA paperwork.

**C.    Buggs Did Not Establish a Failure to Accommodate.**

To make out a *prima facie* failure to accommodate claim, Buggs must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) ***she requested an accommodation***; and (5) ***her employer failed to provide the necessary accommodation***. *Hurtt*, 627 Fed. App'x 414, 419 (6th Cir. 2015) (emphasis added). Buggs disputes Defendant's assertion that she is not necessarily disabled and/or otherwise qualified for the jobs she could hold by seniority at the plant.

The District Court did not need to reach these issues because it concluded that Buggs did not demonstrate a triable factual dispute as to the fourth and fifth required elements; namely that she requested a reasonable accommodation that FCA failed to provide. Buggs did not propose a reasonable accommodation; nor was she ever denied same.

Though it is well established that Buggs bears the initial burden of proposing a reasonable accommodation, Buggs relies on the Seventh Circuit decision of *Hendricks-Robinson v Excel Corp*, 154 F3d 685, 694 (7th Cir. 1998) to argue that "[a] request as straightforward as asking for continued employment is a sufficient request for accommodation." (Appellant's Brief, Doc 14, p.34). Despite being non-binding, the District Court was not persuaded by *Hendricks* because it involved "permanently restricted employees who were placed on medical layoff and then terminated despite seeking to continue working in their original jobs or in some other capacity." (Order, RE 27, PageID# 753).

The same was not true for Buggs. The record demonstrates that her restrictions with respect to lifting, gripping and use of vibratory tools were variable with her doctor's assessment of her condition. She was placed at various times on several assembly line positions, and was not terminated but rather permitted to use any available intermittent FMLA leave (including leaving mid-shift) or placed on unpaid leave when there were no jobs that met all of her

restrictions and were available to her based on her seniority. Moreover, when it became possible for Defendant to take Buggs off the assembly line for a special audit project that would not entail violating any seniority rights, she was placed in a temporary position in Quality. The Quality job took her off the Assembly line and, by her admission, met all of her restrictions. She was working in that position when she was terminated for submitting false FMLA paperwork.

Buggs herself acknowledged that when she had restrictions of no gripping, no lifting over five pounds, and no use of vibratory tools in 2018, there were no assembly jobs that she could perform. So as the Sixth Circuit has recognized, a medical leave of absence was a proper and reasonable accommodation. *Walsh v. United States Parcel Serv.*, 201 F.3d 718, 726 (6th Cir. 2000). While Buggs may have desired a position off of the assembly line, she did not have enough seniority to be transferred to such a job on a permanent basis under the collective bargaining agreement in effect. (Capers Deposition, RE 20-33, PageID# 459). "Reasonable accommodations do not require employers to eliminate essential functions, create new jobs, displace existing employees, or violate other employees' rights under a collective bargaining agreement." *Thompson v. E.I. DuPont deNemours & Co.,* 70 F. App'x 332, 336 (6th Cir. 2003). Accordingly, Buggs was not denied a reasonable accommodation.

**D.    The District Court Correctly Determined that Buggs Could Not Establish a Claim for Retaliation.**

Buggs' retaliation claims under the ADA and PWDCRA fail because she has no evidence that FCA US terminated her employment because of her September 2018 EEOC Charge or her internal complaints about FMLA delays.[5] To state a *prima facie* retaliation claim, Buggs must show: (1) that she engaged in statutorily protected activity; (2) the employer knew of that activity; (3) the employer took an adverse action against the Buggs; and, (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow,* 743 F.3d 1025, 1046 (6th Cir. 2014) (ADA); *Bachman v. Swan Harbour Ass'n*, 653 N.W.2d 415, 437 (Mich. Ct. App. 2002) (PWDCRA). Buggs' *prima facie* case fails at the last element.

FCA US's investigation into her falsified FMLA paperwork was initiated by the corporate office after Anne Stebbins was alerted by Sedgwick, not in response to Buggs filing her Charge or making complaints. Moreover, Shera Capers, who made the termination decision in August 2019, was at the time unaware that Buggs had filed an EEOC Charge almost a full year earlier, in September 2018. (Capers Deposition, RE 20-33, PageID# 456, p. 15). *See*

---

[5] See footnote 4. As the District Court held, the only adverse action alleged by Buggs is her termination. (Order, RE 27, PageID# 750). Other actions alleged were either insufficient to be considered an "adverse action" or were discussed under Buggs' failure to accommodate claim.

*Pawlaczyk v. Besser Credit Union,* No. 1:14-CV-10983, 2015 U.S. Dist. LEXIS 90591, at *35 (E.D. Mich. Apr. 13, 2015) ("if the decision-makers did not know of the protected activity, it did not cause them to take an adverse action"); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."). Accordingly, there is no evidence to suggest Buggs' termination was triggered by the filing of her Charge or complaints.

As with Buggs' discrimination claim, even if Buggs could establish that a causal connection exists, she could not overcome FCA US's legitimate, non-discriminatory reason for terminating her employment. "[A] case alleging unlawful retaliation is not a vehicle for litigating the accuracy of the employer's grounds" for the adverse employment action. *Strickland v. City of Detroit*, 995 F.3d 495, 512 (6th Cir. 2021). Buggs' retaliation claim should be dismissed.

## **CONCLUSION**

For all the foregoing reasons, the District Court's Order granting FCA US's

motion for summary judgment in this case should be affirmed.

Dated: August 4, 2022                    Respectfully submitted,

/s/ Sharon Rae Gross
SHARON RAE GROSS (P42514)
Ogletree, Deakins, Nash,
Smoak & Stewart, PLLC
Attorneys for Defendant FCA US LLC
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
248-593-6400
rae.gross@ogletree.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains fewer than 13,000 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally-spaced typeface using 14 point, Times New Roman.

This 4th day of August, 2022

Respectfully submitted,

/s/ Sharon Rae Gross
SHARON RAE GROSS (P42514)
Ogletree, Deakins, Nash,
Smoak & Stewart, PLLC
Attorneys for Defendant FCA US LLC
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
248-593-6400
rae.gross@ogletree.com

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies and affirms that on August 4, 2022, she electrically served Defendant-Appellee's Brief on Appeal with the Clerk of the Court, via the Court's ECF e-filing system, which will serve an electronic copy of same to all counsel of record who have appeared in this matter.

/s/ Sharon Rae Gross
Sharon Rae Gross (P42514)

## DESIGNATION OF APPENDIX CONTENTS

Complaint, RE 1, PageID# 1-10

2/29/16 Return to Work Form, RE 20-3, PageID# 336-337

7/27/2016 Return to Work Form, RE 20-4, PageID# 339-341

8/19/2016 Return to Work Form, RE 20-6, PageID# 354

1/26/17 Physical Status Report, RE 20-8, PageID# 361

3/17/17 Return to Work Note, RE 20-9, PageID# 363-365

Medical Department Restriction History, RE 20-11, PageID# 369

Work Injury Statement, RE 20-12, PageID# 371

Voluntary Statement, RE 20-13, PageID# 373-375

Urgent Care Note; RE 20-14, PageID# 377 Ex. 13

3/26/18 Return to Work, RE 20-16, PageID# 388

6/01/18 FMLA, RE 20-18 PageID# 392-407

6/18/18 Return to Work Form, RE 20-17, PageID# 390

9/21/18 Return to Work, RE 20-19, PageID 409

12/20/18 Return to Work Form, RE 20-22, PageID# 416

3/20/19 Return to Work Form, RE 20-23, PageID# 418

4/10/19 Voluntary Statement, RE 20-24, PageID# 420

4/25/19 Letter, RE 20-25, PageID# 422

8/1/19 FMLA Notice, RE 20-26, PageID# 424-429

Altered FMLA Paperwork, RE 20-27, PageID# 431-433

Dr. Walker's Confirmation, RE 20-28, PageID# 435-438

Questions for Buggs, RE 20-29, PageID# 440-441

Supervisor's Report and Indefinite Suspension, RE 20-30, PageID# 443

Standards of Conduct, RE 20-31, PageID# 445-448

Termination Letter, RE 20-32, PageID# 450

Stipulation and Order Dismissing Reed, RE 24, PageID# 728-729

District Court's Opinion, RE 27, PageID# 741-755

11/2/20 Antoinette Buggs Deposition, RE 20-2, PageID# 282-334

11/10/20 Shera Capers Deposition, RE 20-33, PageID# 452-460

11/10/20 Anne Stebbins Deposition, RE 20-34, PageID# 462-468

11/10/20 Arkena Willis Deposition, RE 20-15, PageID# 379-386

5/27/21 Donna Langford Reed Deposition, RE 20-5, PageID# 343-352